UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO GUTIERREZ, JR., <br><br> Plaintiff, <br><br> v. <br><br> M. SANDOVAL, <br><br> Defendant. | Case No. 1:20-cv-01130-JLT-EPG (PC) <br><br> FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND <br><br> PLAINTIFF'S MOTION FOR LEAVE TO AMEND BE GRANTED IN PART AND DENIED IN PART <br><br> (ECF Nos. 79, 95) <br><br> OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

## I.   INTRODUCTION

Antonio Gutierrez, Jr. ("Plaintiff), is proceeding *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's claim against defendant Sandoval ("Defendant"), a nurse, for deliberate indifference to his serious medical needs in violation of the Eighth Amendment and Plaintiff's claim against Defendant for medical malpractice based on allegations that Defendant failed to provide or summon care for Plaintiff on August 17, 2019. (ECF Nos. 26 & 31).

On March 14, 2023, Defendant filed a motion for summary judgment "on the grounds that Defendant is entitled to judgment as a matter of law because there is no evidence that Defendant Sandoval was deliberately indifferent to the serious medical needs of the Plaintiff and there is no medical evidence that the lapse of 40 hours between the onset of Plaintiff's

1

symptoms and his treatment made any difference in Plaintiff's outcome." (ECF No. 79, p. 2).[1] The same day, Defendant filed an amended declaration of Janine K. Jeffery in support of the motion. (ECF No. 80). On March 29, 2023, Plaintiff filed his opposition. (ECF No. 81). On March 31, 2023, Plaintiff filed a declaration "Regarding Ratification Issue of MSJ Opposition Papers." (ECF No. 82). On April 12, 2023, Plaintiff filed a ratified declaration of Plaintiff in support of Plaintiff's opposition. (ECF No. 87). On April 17, 2023, Defendant filed her reply. (ECF No. 88). The Court held a hearing on the motion on May 12, 2023. (ECF No. 90).

Additionally, on July 28, 2023, Plaintiff filed a motion for leave to file a Third Amended Complaint, seeking to add Dr. Faye Montegrande as a defendant as well as to remove certain admission in the Second Amended Complaint. (ECF No. 95). Defendant Sandoval filed an opposition on August 11, 2023. (ECF No. 100). Plaintiff filed a reply on August 21, 2023. (ECF No. 101). The Court held a hearing on the motion on September 15, 2023. (ECF No. 103).

For the reasons stated below, the Court recommends denying Defendant's motion for summary judgment, and granting in part and denying in part Plaintiff's motion to amend his complaint.

## II.   CLAIMS AT ISSUE

This case currently proceeds on Plaintiff's Second Amended Complaint (SAC), which asserts claims against Defendant Sandoval, a nurse at California Correctional Institution (CCI) in Tehachapi, CA, for deliberate indifference to his serious medical needs in violation of the Eighth Amendment and Plaintiff's claim against Defendant for medical malpractice based on allegations that Defendant failed to provide or summon care for Plaintiff on August 17, 2019. (ECF Nos. 26 & 31).[2]

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

[2] The Court notes that on August 30, 2021, "Plaintiff's claim for punitive damages based on state law medical malpractice [was] DISMISSED without prejudice subject to possible reassertion by Plaintiff pursuant to the procedures of Cal. Code Civ. Pro. § 425.13." (ECF No. 44, p. 1).

2

Plaintiff's SAC alleges that on Saturday, August 17, 2019, he became aware that the right side of his face was numb, that most of his facial muscles on the right side of his face were paralyzed, and he could not blink his right eye. Plaintiff was taken to the medical clinic, where he was seen by Defendant. "After some cursory tests and a check of his electronic medical records, Sandoval pronounced Gutierrez to be "healthy," told him to return to his cell and drink some water, and advised him that his condition (which she did not name) would eventually 'heal itself.'" (ECF No. 31, pgs. 4–5).

However, Plaintiff's symptoms worsened. The following Monday, August 19, 2019, Plaintiff was seen by Dr. Faye Montegrande, who "quickly" diagnosed Plaintiff with Bell's Palsy and provided medication. (*Id.* at 5). However, Plaintiff "continues to suffer facial numbness, pain, and paralysis. His smile is uneven, his right eyelid twitches constantly, and his entire face has a 'droopy' appearance that it did not have previously." (*Id.*).

### III. SUMMARY OF PARTIES' POSITIONS

#### A. MOTION FOR SUMMARY JUDGMENT

##### 1. Defendant's Motion (ECF No. 79)

Defendant filed a motion for summary judgment on March 14, 2023. (ECF No. 79). Defendant moves for summary judgment "on the grounds that Defendant is entitled to judgment as a matter of law because there is no evidence that Defendant Sandoval was deliberately indifferent to the serious medical needs of the Plaintiff and there is no medical evidence that the lapse of 40 hours between the onset of Plaintiff's symptoms and his treatment made any difference in Plaintiff's outcome." (*Id.* at 2).

As to whether she was deliberately indifferent, Defendant alleges that when she saw Plaintiff, she was not aware that he had Bell's Palsy, and argues that "misdiagnosing a patient does not constitute deliberate indifference." (ECF No. 79-1, p. 4). According to Defendant, "there is no evidence in this case that Nurse Sandoval did anything other than fail to draw an inference of Bell's palsy from Plaintiff's complaint of numbness on the right side of his face." (*Id.* at 7). She checked Plaintiff's vitals, and they were normal. (*Id.*). "Plaintiff was an otherwise healthy young individual and Nurse Sandoval did not believe that there was anything warranting either a hospital admission or calling the on-call physician." (*Id.*).

Defendant also argues that "[t]o establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful," and here, "both Plaintiff's and Defendant's expert have testified that the alleged 40-hour delay in administering treatment to Plaintiff made no difference in his outcome." (*Id.* at 7–8). Finally, Defendant argues that she is entitled to summary judgment on the medical malpractice claim for the same reason, that is, Plaintiff cannot prove causation. (*Id.* at 10–11).

### 2. Plaintiff's Opposition (ECF No. 81)

Plaintiff filed his opposition on March 29, 2023. (ECF No. 81). Plaintiff argues that he has raised a triable issue of fact regarding whether Defendant's treatment constitutes deliberate indifference. (*Id.* at 17). Plaintiff argues that Defendant "clearly knew that facial numbness was serious: she claims to have ruled out stroke." (*Id.*). However, she did not investigate further or summon help in order to determine the cause. (*Id.*). Instead, she told Plaintiff to drink water. (*Id.*). Additionally, Plaintiff's expert, nurse Ingalls, found that "Nurse Sandoval's careless actions in treating Mr. Gutierrez were so egregious and so disconcerting that the term deliberate indifference is fitting." (*Id.* at 19) (citation and internal quotation marks omitted).

As to actual causation, Plaintiff argues that, because of Defendant's mistakes, Plaintiff "was not diagnosed *and treated appropriately* within 72 hours of his presentation." (*Id.* at 21). Had Defendant summoned a doctor, that doctor would have immediately recognized that Plaintiff was suffering from Bell's Palsy, and would almost assuredly have provided the correct medication and the correct dosage. (*Id.* at 24).

Plaintiff also argues that while Dr. Montegrande diagnosed and attempted to treat Plaintiff's condition on August 19, 2019, "Gutierrez was prescribed the wrong steroid, at the wrong dosage, for the wrong length of time, and with tapering beginning immediately instead of at the end." (ECF No. 81, at p. 12). Thus, Plaintiff failed to receive the medication he needed within the critical time period for treatment.

As to proximate cause, Plaintiff argues that "foreseeable intervening causes will not negate [Defendant's] responsibility," and "[i]t was foreseeable that further medical mistakes might occur." (*Id.* at 25–26).

4

Finally, Plaintiff argues that even if he did receive the correct medications at the correct dosage within forty hours, "there is still a triable issue of fact as to whether his would have changed his outcome." (*Id.* at 26–27). "Although Dr. Feinberg's opinion rejects this idea, and Dr. Whitman does not confirm or reject it, two of Gutierrez's doctors – Montegrande and Hill – explained to him at different points that his long-term prognosis had been adversely affected by his delayed treatment." (*Id.* at 27).

### 3. Defendant's Reply (ECF No. 88)

Defendant filed her reply on April 17, 2023. (ECF No. 88). Among other things, Defendant argues that it is undisputed that the forty-hour delay in receiving treatment did not harm Plaintiff. Defendant also argues that Plaintiff is attempting to raise a new theory of liability. (*Id.* at 4). "That is, he claims that Dr. Montegrande provided improper treatment and that Nurse Sandoval is responsible for Dr. Montegrande's allegedly improper treatment." (*Id.* at 2–3). Defendant argues that "[i]n addition to the fact that Plaintiff cannot raise a new theory in response to summary judgment, the law is clear that Nurse Sandoval cannot be held responsible for the acts of Dr. Montegrande under Section 1983 or state law medical malpractice principles." (*Id.* at 3).

### B. PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

Following the hearing on the motion for summary judgment, the Court asked for supplemental briefing on the following issue: "1) Whether Plaintiff should be permitted to amend his complaint at this time to include allegations of error by Dr. Montegrande; and 2) Whether Plaintiff may proceed on his claim for deliberate indifference and seek nominal damages even if he cannot show that his long-term prognosis was adversely affected by the delay in treatment." (ECF No. 94).

Following the Court's order, Plaintiff filed a motion for leave to file a Third Amended Complaint (TAC) along with a proposed TAC. (ECF No. 95). The TAC contains additional and amended allegations regarding Dr. Montegrande. Plaintiff alleges that she failed to enter a progress note to document her encounter with Gutierrez and the medications she prescribed, and "Montegrande was thus deliberately indifferent to Gutierrez's care by acting in a fashion that was directly contrary to Gutierrez's interests and by attempting to leave the impression that

5

he had never visited the medical clinic and had never been a patient in need of effective treatment." (ECF No. 95-5, at p. 15). Additionally, Dr. Montegrande failed to order the correct dosage of the appropriate drug, and did not order constant monitoring of Plaintiff. (ECF No. 95-5, at p. 20) Plaintiff seeks to amend his complaint to amend factual allegations regarding Dr. Montegrande's care, including the failure to prescribe the correct medication, and to assert claims against Dr. Montegrande for deliberate indifference to serious medical needs.

Defendant Sandoval's opposition argues that leave should be denied because adding a defendant would be unfair and prejudicial to Defendant Sandoval's defense. Additionally, Plaintiff argues that Plaintiff should not be permitted to amend the complaint to correct statements which otherwise would be binding admissions that have been relief on throughout the litigation. (ECF No. 100).

## IV. PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

The Court first addresses Plaintiff's motion for leave to amend the complaint because determining the factual allegations and claims at issue may be necessary to determining Defendants' motion for summary judgment. Again, Plaintiff seek to amend his complaint to add assert a claim for deliberate indifference to serious medical needs as to Dr. Montegrande, who is not currently a defendant, and to amend certain factual allegations regarding the medication Plaintiff eventually received from Dr. Montegrande. Notably, Plaintiff does not seek to add a claim for medical negligence.

### A. Legal Standards for Leave to Amend Complaint

Under Rule 15, "a party may amend its pleading only with the opposing party's written consent or with the court's leave." "The court should freely give leave when justice so requires." *Id.* Courts consider five factors when deciding to grant or deny leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility; and (5) the plaintiff's prior opportunities to amend. *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013). Leave to amend need not be granted "where the amendment would be futile or where the amended complaint would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

Generally, "[a] complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). When a plaintiff's conduct fails to put a defendant on notice of new allegations it intends to raise in opposition to summary judgment, the new allegations can be disregarded. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) ("[T]he complaint gave the [defendants] no notice of the specific factual allegations presented for the first time in [plaintiff's] opposition to summary judgment.").

However, the Ninth Circuit has also held that "[w]here plaintiffs fail[ ] to raise [a claim] properly in their pleadings, . . . [if] they raised it in their motion for summary judgment, they should [be] allowed to incorporate it by amendment under Fed. R. Civ. P. 15(b)." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014)). In *Desertrain*, the Ninth Circuit held that the district court abused its discretion when it failed to construe the new claim raised on summary judgment as a motion to amend the pleadings under Rule 15(b). In concluding that amendment should have been allowed, the court emphasized that the plaintiffs had not learned of information relevant to the new claim until late in the discovery period and that the defendants were not prejudiced by the amendment because plaintiffs' counsel's questions during depositions "put [d]efendants on notice that [p]laintiffs were concerned with the vagueness of [the challenged ordinance]" and plaintiffs' counsel discussed their vagueness argument with defense counsel the day before the parties filed their summary judgment motions. *Id.* at 1154–55.

**B.      Legal Standards for Deliberate Indifference to Serious Medical Needs**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton

infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836–37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi*, 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

**C.     Proposed Claim for Deliberate Indifference Claim Against Montegrande**

With those standards in mind, the Court first turns to whether Plaintiff should be permitted to amend his complaint to assert a claim for deliberate indifference to serious medical needs against Dr. Montegrande.

As Defendant emphasizes in opposing the motion for leave to amend the complaint, Plaintiff's original complaint included such a claim against Dr. Montegrande. However, in

8

screening that complaint, the Court found that Plaintiff's complaint failed to state an Eighth Amendment claim for deliberate indifference to his serious medical needs as to Montegrande because "defendant Montegrande provided Plaintiff with treatment. Plaintiff's only issue with defendant Montegrande appears to be that she failed to document the encounter, but there is no indication that this failure harmed Plaintiff's health or exposed Plaintiff to a serious risk of harm." (ECF No. 10, at p. 9). The Court gave Plaintiff leave to amend the complaint. When Plaintiff did so, with the help of counsel, he did not include a claim against Dr. Montegrande. (ECF No. 15).

Plaintiff's proposed TAC contains additional allegations against Dr. Montegrande in support of the claim of deliberate indifference to serious medical needs. Plaintiff explains that a failure to document the encounter harmed Plaintiff because "accurate medical record keeping was a fundamental component of proper medical care." (ECF No. 95-5, at p. 14) Plaintiff also alleges, "if the reason she declined to document the encounter on August 19, 2019 was the cover up for Sandoval, this is another indicator of deliberate indifference. In such a scenario, she risked and sacrificed the patient's care in putative service to avoiding legal problems for a colleague." (ECF No. 95-5, at p. 14). Plaintiff also alleged that Dr. Montegrande was "deliberately indifferent to adjusting to the proper dosage or ordering real prednisone on an emergency basis . . . was deliberately indifferent to the proper medication, . . . [and] was deliberately indifferent in refusing to take even the most rudimentary steps to research the exact dosage applicable for Bell's, calculate a proper conversion, or direct the pharmacy to provide the recommended, converted dosage, as well as arrange for constant monitoring." (ECF No. 95-5, at p. 19). Additionally, Plaintiff alleges that "Montegrande ordered [the wrong medication] to mask the conceal [sic] that Gutierrez had a more serious medical problem . . . ." (ECF No. 95-5, at p. 19. Plaintiff argues that "[w]hichever reality is the truth, or if some combination is, such decision making reflects deliberate indifference to Gutierrez's medical care by Montegrande." (ECF No. 95-5, at p. 19). Although Montegrande later entered a retroactive medical note after the Prison Law Office inquired into Plaintiff's care, that note nevertheless omitted the earlier encounter with Defendant Sandoval and omits relevant details about Plaintiff's medication. (ECF No. 95-5, at p. 20).

While these allegations go further than the original complaint in alleging harm to the Plaintiff, the Court finds that amendment to assert an Eighth Amendment claim would ultimately be futile. Even according to the TAC, Dr. Montegrande attempted to treat Plaintiff's condition, including diagnosing his condition and promptly prescribing medication. Even if Dr. Montegrande's prescription was incorrect, such action would amount at most to medical negligence (discussed below). Similarly, while Plaintiff alleges that Dr. Montegrande failed to document the encounter, there are no facts indicating that this failure was purposeful or intended to harm Plaintiff. While Plaintiff's complaint speculates on potential ill-motives she might have had for failing to document the encounter, including to cover-up Sandoval's failure to treat Plaintiff, there are no facts supporting such an allegation. The lack of supporting facts is especially noteworthy as the current parties have concluded discovery.

The Court also finds that Defendant Sandoval would be prejudiced by amendment at this time. The case has been pending since 2020 and the parties have already briefed Defendants' motion for summary judgment. Adding a defendant at this date would very substantially delay the case. Plaintiff has also had multiple opportunities to amend and has done so twice before the current complaint. While the Court does not agree that Plaintiff has acted in bad faith or unduly delayed, for reasons discussed more below, given the other factors, the Court recommends that leave to amend to add a claim for deliberate indifference to serious medical needs as to Dr. Montegrande be denied.[3]

### D. Proposed Amendment of Facts Regarding Dr. Montegrande's Treatment of Plaintiff

Plaintiff also requests leave to file a TAC because it alters the factual allegations regarding Dr. Montegrande's treatment of Plaintiff, which may be relevant to Plaintiff's pending claims against Defendant Sandoval. Specifically, while Plaintiff's current operative complaint asserted that Dr. Montegrande provided the correct medications when she treated Plaintiff, the TAC alleges that Dr. Montegrande's prescriptions were incorrect both in type of medication and dosage.

---

[3] Plaintiff does not seek to add a claim for medical negligence against Dr. Montegrande. (ECF No. 95-1 at p. 10 ("Any medical malpractice claim against Dr. Montegrande, as a government agent, had long expired due to DGE limitations.")).

As described above, amendment may be proper in connection for summary judgment where Plaintiff learned new information relevant to the claim after filing the complaint, and defendant is not prejudiced by the delay because they received adequate notice of the changed theory. Here, Plaintiff asserts that his counsel learned that Dr. Montegrande's prescription was in error during this case when Plaintiff's expert witness prepared an expert report in this case. Plaintiff's expert disclosed this theory to Defendant in his expert report dated September 9, 2022 (ECF No. 81-4), and Defendant's expert had an opportunity to address this theory in Defendant's rebuttal expert report and in the course of expert discovery. Moreover, Defendant's own motion for summary judgment acknowledges that this is Plaintiff's theory, but asks the court to disregard it because it contradicted statements made in Plaintiff's complaint. (ECF No. 79-1, at p. 9 ("Plaintiff seeks to overcome Nurse Sandoval's evidence by claiming that Plaintiff did not receive the correct medicine when he saw Dr. Montegrande.")). It is also notable that Defendant Sandoval does not set forth any additional discovery she would take, or would have taken, if this theory were disclosed earlier.

       Given that Defendant's notice of this theory and opportunity to rebut it in the context of expert reports and the very substantial briefing in connection with the pending motions, the Court recommends granting Plaintiff's motion for leave to amend his complaint to proceed with the TAC for the purpose of amending Plaintiff's factual allegations to conform to the evidence and expert opinion learned after Plaintiff filed his complaint in this action. *See Surdak v. DXC Technology*, 2022 WL 18142545, at *5 (C.D. Cal., Dec. 20, 2022) (allowing amendment of Plaintiff's claims to incorporate the arguments raised in his opposition to summary judgment because defendant "was on notice before the close of discovery that Plaintiff would pivot his claims" and "Plaintiff proceeded to engage in discovery clearly premised on the new facts and the new theory"); *Yuen v. City of Montebello*, 2021 WL 911891, at *5 (C.D. Cal., Feb. 3, 2021) (permitting Plaintiff to proceed on theory that deviates from the Complaint where "Plaintiff repeatedly questioned Defendants and MPD employees during depositions about whether MPD had a policy of keeping DUI suspects in custody for a minimum of six hours, even where suspects' initial BAC was below .07 or where a suspect sobers up before the six-hour period ends" and "Defendants fully addressed this issue in their

opposition to Plaintiff's Motion and have not suggested that they require further discovery on the matter").

Accordingly, the Court recommends granting Plaintiff's motion for leave to amend his complaint in part: to permit Plaintiff to proceed on his TAC, including the allegations that Dr. Montegrande's prescriptions were incorrect both in type of medication and dosage, but without adding Dr. Montegrande as defendant.

## V.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Court now turns to Defendant Sandoval's motion for summary judgment, which argues that both claims against Defendant Sandoval, for deliberate indifference to serious medical needs and medical malpractice, should be dismissed because the undisputed facts establish that Defendant Sandoval cannot be liable under the applicable legal standards.

### A.     Legal Standards for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca* ("*Albino II*"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn . . . "; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed . . . " *Anderson*, 477 U.S. at 255.

### B.      Analysis

#### 1.      Deliberate Indifference

Defendant Sandoval's motion for summary judgment argues that, according to the undisputed facts, defendant Sandoval lacked a culpable state of mind for a constitutional claim based on deliberate indifference to serious medical needs.[4]

Defendant's argument on this point is not well-developed or supported. Defendant argues that Nurse Sandoval merely failed to draw an inference that Plaintiff was suffering from Bell's palsy, and notes that Plaintiff's vital signs were normal and Plaintiff did not have any history of medication or chronic disease. (ECF No. 79-1, p. 7). However, Plaintiff's opposition includes numerous pieces of evidence raising a triable issue of fact as to whether Nurse Sandoval acted with deliberate indifference, including that at the time of Plaintiff's encounter with Nurse Sandoval, Plaintiff's face was droopy, his speech was slurred, and he told Nurse

---

[4] Notably, Defendant does not make this argument as to the medical malpractice claim, which only requires a negligent state of mind. Defendant also does not contest that Plaintiff had a serious medical need.

Sandoval that he could not feel his face or blink his eye. In response, Nurse Sandoval did not perform any physical tests, administer any screening assessments, or physically examine Plaintiff. She did not summon any assistance, emergency or otherwise. Instead, Sandoval told Plaintiff "You know what? It's a weekend. We don't have a doctor." She then told Plaintiff to "just drink a lot of water." When Plaintiff responded "I can't blink my eye. I can't close it," Sandoval responded that Plaintiff was "just going to have to put [his] arm up and sleep like that." Moreover, Sandoval failed to record anything about the medical visit in the records system.

Plaintiff has also submitted the results of an internal affairs investigation, which set forth various factual allegations based on documents and witness interviews, and concluded that Defendant violated 16 different prison rules. The report concluded: "[y]our actions led to unnecessary suffering (including the fear that he may have suffered a stroke) and violated the nursing standard of care. Thus, your conduct constitutes inexcusable neglect of duty and other failure of good behavior." (ECF No. 81-2, p. 248). While the parties dispute whether the conclusions of the report will be admissible at trial, Defendant does not refute the underlying facts and rules relied on in that report.

Defendant's reply barely addresses the evidence regarding Defendant's mental state. Defendant briefly argues that she looked at Plaintiff's medical history, took Plaintiff's temperature, took Plaintiff's blood pressure, took Plaintiff's oxygen saturation rate, and took Plaintiff's pulse (ECF No. 88, p. 10), but fails to refute any of the other purported facts in Plaintiff's opposition including that Plaintiff showed obvious signs of facial paralysis and Defendant failed to offer any treatment or summon someone who could provide treatment.[5]

---

[5] Circumstantial evidence, such as evidence of obviousness, can be used to show subjective knowledge. *Farmer*, 511 U.S. at 842–43 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, *cf.* [J. Hall, General Principles of Criminal Law 118 (2d ed. 1960)] (cautioning against 'confusing a mental state with the proof of its existence'), and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Cf.* LaFave & Scott § 3.7, p. 335 ('[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of').") (alterations in second parenthetical in original).

Nor does Defendant meaningfully dispute that, if Plaintiff's submitted facts are true, at the very least there is a genuine dispute of material fact regarding whether Defendant's conduct amounts to deliberate indifference to Plaintiff's serious medical needs.

Accordingly, Plaintiff has put forth sufficient evidence to raise a triable question of fact as to whether defendant Sandoval acted with the state of mind of deliberate indifference, that is, that she knew of and disregarded an excessive risk to Plaintiff's health. *Toguchi*, 391 F.3d at 1057 ("A prison official acts with deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.") (alterations in original); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) ("'Deliberate indifference' is evidenced [] when "'the official knows of and disregards an excessive risk to inmate health or safety . . . .") (quoting *Farmer*, 511 U.S. at 837).[6]

### 2. Causation

Defendant next argues that it is entitled to summary judgment in her favor on the claims of deliberate indifference to serious medical needs and medical malpractice on the ground that Plaintiff cannot establish that Defendant's failure to properly treat him cause any harm.

"Where a prisoner alleges that delay of medical treatment demonstrates deliberate indifference, the prisoner must show that the delay caused 'significant harm and that defendants should have known this to be the case.'" *Mamea v. Thung*, 2021 WL 289376, at *6 (E.D. Cal. Jan. 28, 2021) (quoting *Hallett v. Morgan*, 296 F.3d 732, 745–46 (9th Cir. 2002)); *see also Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990) ("Nor does the delay in treatment that [plaintiff] suffered constitute an eighth amendment violation; the delay must have caused substantial harm."); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) ("[M]ere delay of surgery, without more, is insufficient to state a claim of deliberate

---

[6] To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on evidence it considered to be admissible. Generally, it is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment. This is particularly true when "'many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence.'" *Capital Records, LLC v. BlueBeat, Inc.*, 765 F.Supp.2d 1198, 1200 n.1 (C.D. Cal. 2010) (quoting *Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)).

15

medical indifference; even if [plaintiff] were aware that surgery had been recommended when he brought the first action, he would have had no claim for deliberate medical indifference unless the denial was harmful.").

As to Plaintiff's negligence claim, "[t]o prove causation, the plaintiff must show: (1) that the defendant's breach of duty was a cause in fact of his or her injury; and (2) that the defendant's breach was the proximate, or legal, cause of the injury." *Union Pac. R.R. Co. v. Ameron Pole Prod. LLC*, 43 Cal. App. 5th 974, 980 (2019). "California has adopted the 'substantial factor' test for cause in fact determinations. Under that test, a defendant's conduct is a cause of a plaintiff's injury if: (1) the plaintiff would not have suffered the injury but for the defendant's conduct, or (2) the defendant's conduct was one of multiple causes sufficient to cause the alleged harm." *Id.* at 981 (citation omitted). "In a medical malpractice action the element of causation is satisfied when a plaintiff produces sufficient evidence to allow the jury to infer that in the absence of the defendant's negligence, there was a *reasonable medical probability the plaintiff would have obtained a better result*." *Espinosa v. Little Co. of Mary Hosp.*, 31 Cal. App. 4th 1304, 1314–15, 37 (1995) (citation and internal quotation marks omitted); *see also Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d 396, 402 (1985) ("The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case.").

As to legal cause, "[u]nder traditional tort principles, once a defendant's conduct is found to have been a cause in fact of the plaintiff's injuries, the conduct of a third party will not bar liability unless it operated as a superseding or supervening cause, so as to break the chain of legal causation between the defendant's conduct and the plaintiff's injuries." *Cole v. Town of Los Gatos*, 205 Cal. App. 4th 749, 770 (2012). "Even when a third party's intervening act is unforeseeable, the defendant's conduct may continue to be operate as a legal cause if the defendant could reasonably foresee the injury resulting from his own conduct." *Id.*

In support of her motion, Defendant argues that even if Defendant Sandoval failed to properly treat Plaintiff when she saw him, Plaintiff could have obtained a complete recovery if Dr. Montegrande had properly treated Plaintiff when she saw him, 40 hours later. Thus, if

16

Dr. Montegrade had administered the correct medicine to Plaintiff, Plaintiff would not be able to show that the delay between Defendant Sandoval and Dr. Montegrande's medical visits caused him harm. (ECF No. 79-1, at p. 10 ("Plaintiff cannot prove that the alleged 40-hour delay cause him any harm. As such, Defendant's motion for summary judgment should be granted.")).

In response, and throughout the course of the motion to amend the complaint (addressed above), Plaintiff puts forth evidence that Dr. Montegrande did not eventually administer the correct medication to Plaintiff. On the contrary, Plaintiff "was prescribed the wrong steroid, at the wrong dosage, for the wrong length of time, and with tapering beginning immediately instead of at the end." (ECF No. 81, at p. 12). Thus, Plaintiff argues, this is not a case of merely delayed care. Plaintiff attaches the expert neurology report of Gregory Whitman, who sets for the following relevant opinions:

> If RN Sandoval had contacted a physician on Day 1 of this illness, it is probable that a corticosteroid would have been started earlier, increasing the chance of a complete recovery. . . . By not documenting the initial encounter and choosing not to contact a supervising health care provider, RN Sandoval kept the problem hidden for days and was a causal factor in the development of Mr. Guterrez's facial nerve injuries. . . .
>
> Dr. Montegrande failed to prescribe the usual regimen of high-dose corticosteroid known to be effective in treating Bell's palsy. . . .
>
> [I]f the standard treatment of high-dose corticosteroid had been given to Mr. Guterrez within 72 hours of symptom onset, it is medically probable, i.e., more likely than not, that there would have been a complete recovery.

(ECF No. 81-4) (footnotes omitted); *see also* Dr. Whitman's Rebuttal Expert Report, ECF No. 81-4, p. 314 ("If Ms. Sandoval had identified his facial palsy as the emergency that she herself said it would be, in an interview with Mr. Hamlin, then the correct action would have been for her discuss this emergency with a qualified health care provider. If she had done that, then based on my experience, it is likely that he would have either been treated with high-dose prednisone, which is standard, or else referred to an emergency care facility, where, based on my experience, he would likely have been treated with high-dose prednisone following an accepted Bell's palsy treatment regimen."). In other words, both Nurse Sandoval and

17

Dr. Montegrande had an opportunity to provide Plaintiff the correct medication within the critical treatment window, but both failed to do so.

In reply, Defendant argues that, even if Dr. Montegrande failed to provide the proper treatment, the claims against Nurse Sandoval should be dismissed because Nurse Sandoval cannot be held liable for Dr. Montegrande's errors. (ECF No. 88, at 5–6).

After a review of the relevant law, the Court recommends allowing Plaintiff to proceed on his claims because Plaintiff has put forth sufficient evidence that Plaintiff was harmed by Nurse Sandoval's failure to provide proper medical care, notwithstanding that Dr. Montegrande had a later opportunity to provide that care. Construing disputed facts in favor of Plaintiff, Nurse Sandoval's actions (or lack thereof) deprived Plaintiff of medical treatment needed to treat his serious medical condition within the critical window of time. Moreover, the Court has found no legal support for Nurse Sandoval's defense that she is not liable so long as someone later in the chain also failed to provide adequate care.

This analysis is supported by *Conn v. City of Reno*, 591 F.3d 1081 (9th Cir. 2010), *vacated by* 563 U.S. 915 (2011), *reinstated in relevant part by* 658 F.3d 897 (9th Cir. 2011). In *Conn*, which involved a section 1983 claim, Clustka was taken to jail on Civil Protective Custody on August 26, for her own safety. *Conn*, 591 F.3d at 1092. Defendants Ashton and Robertson were the officers who took Clustka to the jail. *Id.* These defendants were warned that she had mental health problems (which included suicidal ideations), and defendant Ashton admitted that he was aware of Clustka's mental health problems. *Id.* at 1091–92. Additionally, during the transport, after Clustka realized she was being taken to jail, she "wrapped the seatbelt around her neck, in an apparent attempt to choke herself." *Id.* at 1092. She also yelled that she would kill herself. *Id.* Neither defendant reported to jail staff that Clustka attempted to choke herself or threatened to kill herself. *Id.*

After arriving at the jail, Clustka "underwent a brief intake assessment." *Id.* She was held at the jail for nearly four hours, and then she was then released. *Id.* at 1092–93. That evening, Clustka's mother called 911 because Clustka, who was grossly intoxicated, was causing a disturbance. *Id.* at 1093. Clustka "was taken to the emergency room, readmitted for observation, and released around 3:00 a.m." *Id.*

On August 27, Clustka was arrested, and returned to the jail. *Id.* "After Clustka was booked, she was medically screened by the nurse on duty and recommended for assignment to the general inmate population. Because Clustka had been on suicide watch during her previous detention in March, she was placed in the mental health unit in a red jumper to alert staff that she was a high risk detainee. She was not, however, placed on suicide watch at this time. As a result there was a bed sheet available in her cell." *Id.* at 1093. The next day, Clustka "committed suicide by hanging herself with the bed sheet." *Id.* Her surviving children filed suit, naming as defendants, among others, Ashton and Robertson. *Id.* at 1093–94.

"The Conns contend[ed] that had the officers responded appropriately to her attempted choking and suicide threat, Clustka would not have committed suicide at the time she did and that the officers' failure to respond set in motion a sequence of events in which Clustka did not receive the medical treatment she urgently needed." *Id.* at 1098–99. The Ninth Circuit ruled in favor of the Conns, explaining that "[t]here need only be evidence in the record to support the inference that if medical staff had evaluated [Clustka], prevented [her] from entering the jail, and directed [her] to a mental hospital [Clustka] almost certainly would have received the care [s]he needed, rather than face conditions that worsened [her] outlook." *Id.* (alterations in original) (citation and internal quotation marks omitted). It was thus an issue for the jury to decide. *Id.*

Here, as in *Conn*, there is evidence in the record (in the form of an expert report) from which a jury could conclude that, had Defendant properly evaluated Plaintiff and immediately summoned a doctor, Plaintiff would have received the treatment that he needed and made a complete recovery. Thus, similar to *Conn*, Plaintiff has sufficiently shown that Defendant's conduct was a substantial factor in causing Plaintiff's injury.

The Court acknowledges Defendant's evidence that Plaintiff would have suffered the same harm even in the absence of Defendant's failure summon a doctor on August 17, 2019, in that Plaintiff saw a doctor less than two days later, medication was prescribed, and Plaintiff did not make a complete recovery. However, as in *Conn*, this is a dispute of fact that should be resolved by a jury, not the Court. *See Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d

1062, 1080 (9th Cir. 2013) ("If reasonable persons could differ' on the question of causation then 'summary judgment is inappropriate and the question should be left to a jury.").

Accordingly, the Court finds that Defendant's motion for summary judgment on both of Plaintiff's claims of Defendant's deliberate indifference to serious medical needs and medical malpractice should be denied.

## VI. RECOMMENDATIONS

Accordingly, based on the foregoing, **IT IS RECOMMENDED** that:

1. Plaintiff's motion for leave to amend the complaint (ECF No. 95) be **GRANTED in part and DENIED in part** so that Plaintiff be allowed to proceed on his Third Amended complaint for the claims asserted against current defendant Sandoval, but without adding Dr. Montegrande as a defendant.
2. Defendant Sandoval's motion for summary judgment (ECF No. 79) be **DENIED**;

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **twenty-one (21) days** after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 29, 2024**                    /s/ Erica P. Grosjean
                                                                   UNITED STATES MAGISTRATE JUDGE

20